# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

LINDA MULDOON,

    Plaintiff,

v.                                      CASE NO.:

ABC LIQUORS INC
d/b/a ABC Fine Wine & Spirits

    Defendant,
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, LINDA MULDOON, (hereinafter "Ms. Muldoon" or "Plaintiff"), by and through the undersigned counsel, hereby files this Complaint and Demand for Jury Trial against defendant, ABC LIQUORS INC d/b/a ABC Fine Wine & Spirits, (hereinafter "ABCFWS," "Company," or Defendant") and states the following:

## INTRODUCTION

1. The Plaintiff brings this action against Defendant, her former employer, seeking to recover damages for violations by Defendant of the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 et seq. ("FMLA").

1

2. As further set forth below, Plaintiff alleges that Defendant unlawfully interfered with the exercise of Plaintiff's FMLA rights and unlawfully retaliated against her for exercising those rights in violation of the FMLA.

3. As a direct and proximate result of unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, she has suffered and continues to suffer loss of her professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4. Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5.

6. This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in the United States District Court for the Middle District of Florida, Orlando Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Orange County, Florida.

## **PARTIES**

8. The Plaintiff is LINDA MULDOON, an Orange County, Florida resident.

9. During the period from February 2019, until May 4, 2022, Defendant employed Plaintiff.

10. At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

11. At all times material herein, Plaintiff was an employee entitled to protection as defined by the FMLA.

12. The Defendant is ABC LIQUORS INC d/b/a ABC Fine Wine & Spirits, a Florida Profit Corporation principally located at 8989 South Orange Avenue, Orlando, Florida 32824 in Orange County.

13. At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Orange County, Florida.

14. At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to, the FMLA.

15. Accordingly, Defendant is liable under the FMLA for unlawfully interfering with Plaintiff's rights and for retaliating against Plaintiff in violation of the FMLA as more fully alleged herein.

## GENERAL ALLEGATIONS

16. In February 2019, ABCFWS hired Linda Muldoon a Talent Acquisition Specialist.

17. At the start of Ms. Muldoon's employment, she reported to ABCFWS' Director of Talent Acquisition, Margot Finley.

18. In late 2019/early 2020, Ms. Finley resigned from her position. ABCFWS' Director of Team Member Services, Kelly Crowder, became Ms.

Muldoon's supervisor. At the same time, Charles Bailes IV left the Team Member Services department to run ABCFWS' Warehouse division.

19. Following Ms. Finley's resignation, Ms. Muldoon took on all of Ms. Finley's responsibilities, without another team member in the Talent Acquisition area, as well as continued her own work. Eventually, Ms. Crowder hired a new Director of Talent Acquisition, from outside of the company, who quickly left ABCFWS.

20. Following this Director's departure, Ms. Muldoon received a promotion to the position of Senior Manager – Talent Acquisition. Additionally, Mr. Bailes IV and Ms. Crowder informed Ms. Muldoon that she would eventually be promoted to the Director position as they understood she currently performed the job duties associated with the role, but they had to wait to promote her due to an ongoing discrimination lawsuit filed by the short-term Director that Ms. Crowder hired.

21. As Senior Manager – Talent Acquisition, Ms. Muldoon oversaw all aspects of hiring. This included candidate pipeline development, hiring strategies, processes, and training.

22. Ms. Muldoon personally recruited, screened, and interviewed key candidates; worked with leadership to ensure hiring goals were met;

ensured through processes and direct involvement that all 140 retail stores were fully staffed; provided staffing for corporate office positions; oversaw and worked with warehouse hiring; wrote all job descriptions; handled ABCFWS' social media related to hiring and the content for the corporate hiring website; developed partner strategies to ensure hiring success including partnerships with Indeed, Appcast, and Paradox; served as SME for all hiring subjects and environments; developed original training content that ABCFWS rolled out in the field as official online courses; attended key leadership meetings; and provided updates on hiring and hiring trends.

23.    On February 17, 2022, Ms. Muldoon started having difficulty breathing, experienced chest pains, had a persistent fever of 102 F or higher, and suffered from a persistent mucus cough resulting in her need to cut a meeting short as she could not speak due to excessive coughing. As a result of her symptoms, Ms. Muldoon sought medical treatment.

24.    Ms. Muldoon's doctor diagnosed her with Pneumonia and ordered her to bedrest until March 13, 2022. Since she would be missing work for almost a month, Ms. Muldoon applied for and received FMLA leave.

25. While out on FMLA Leave, Ms. Crowder frequently checked on Ms. Muldoon to ask when Ms. Muldoon would be returning to work and instructed Ms. Muldoon to let her know if she could help with anything.

26. On March 14, 2022, Ms. Muldoon's doctor released her to return to work on a part-time basis; limiting Ms. Muldoon's hours to four per day until March 24, 2022, under an approved Intermittent FMLA leave.

27. Prior to becoming ill, Ms. Muldoon typically worked ten to twelve hours per day to keep up with projects and the needs of the company. Upon her return to work from FMLA leave, Ms. Muldoon discovered her calendar had been filled with meetings, most of which exceeded the four hours Ms. Muldoon could work during her approved Intermittent FMLA period. Despite Ms. Crowder telling Ms. Muldoon that everything was fine regarding ABSFWS hiring while she was out on full FMLA leave, Ms. Muldoon returned under her 4-hour per day FMLA time to discover that she had approximately eight hundred emails to review, many of which included things that needed to be done of varying priorities. As such, Ms. Muldoon found it necessary to cancel and reschedule numerous meetings to get important tasks done.

28. During Ms. Muldoon's Intermittent FMLA, which required a reduced hourly workload of four hours per day from March 14, 2022, to March 24, 2022, and increased to allow Ms. Muldoon to work six hours per day from March 25, 2022, to April 29, 2022, Ms. Crowder continued to hold Ms. Muldoon responsible for the same workload she had prior to her illness. When Ms. Muldoon reminded Ms. Crowder about her approved Intermittent FMLA leave, Ms. Crowder would become agitated and let Ms. Muldoon know that other managers, specifically Sean Kelly, were upset that their job postings had not been completed. Ms. Crowder made it clear that she expected Ms. Muldoon to complete the same amount of work that she did in a twelve plus hour workday within her new allotted time of four to six hours as approved by her Intermittent FMLA leave. Ms. Muldoon let Ms. Crowder know that she would prioritize job listings but doing so would mean she would have to move additional meetings to accommodate her allowable work schedule.

29. Following the conversation with Ms. Crowder, who made it clear that job postings were top priority, Ms. Muldoon had a talk with ABCFWS' Project Manager, Barb Wersel, to let Ms. Wersel know that she would need to break up a previously scheduled six-hour vendor meeting into two days

so that she could get other work tasks completed. Ms. Wersel responded by saying that she would not be canceling or rescheduling any more meetings. Ms. Muldoon attempted to explain her reduced temporary schedule related to her approved Intermittent FMLA leave for Ms. Wersel, but Ms. Wersel just became frustrated that Ms. Muldoon could not accommodate her needs over the needs of the company. Ms. Wersel then complained to Ms. Crowder about Ms. Muldoon's request to split her six-hour vendor meeting across two days. The Parties eventually agreed to split the meeting into two sessions.

30. Unfortunately, during the first session, Ms. Muldoon had a fever of 101 degrees and ran over her allotted FMLA time, so needed to stop the meeting and reschedule. Ms. Wersel expressed frustration and emailed Ms. Muldoon that there would be no more rescheduled meetings as the "WorkDay Conversion Project" that she managed was the company's top priority. At the next meeting with Ms. Wersel and the WorkDay team, Ms. Muldoon was over her allotted FMLA hours, but felt she could not reschedule the meeting due to Ms. Wersel's communication to her. Ms. Muldoon continued the meeting despite not feeling well and should have been resting per her doctor's orders and FMLA guidelines. Ms. Muldoon

interacted with the meeting participants, asking questions, and ensuring that she understood the presentation. This was the first meeting in which Ms. Muldoon could participate in regarding the conversion since she had been out with pneumonia when the initial meetings began for her division. Ms. Muldoon did her best to participate, and the WorkDay implementation team was able to complete all their material in the allotted time, and the meeting ended on a positive note. However, Ms. Wersel went to Ms. Crowder and reported that Ms. Muldoon was "not professional" during this meeting. In response to Ms. Wersel's complaint, Ms. Crowder wrote Ms. Muldoon up.

31. Ms. Muldoon refused to sign the write up, again reminding Ms. Crowder of her approved reduced work schedule under Intermittent FMLA leave. Additionally, the vendor, Workday, agreed to split the 6-hour meeting into two 3-hour meetings when Ms. Muldoon directly contacted them, the meeting ended positively and on-time, and the vendor had told Ms. Muldoon that everything had been accomplished for that meeting and thanked her for her time. Following the session when Ms. Crowder presented the formal write-up, another employee who attended the meeting, Eduardo Fuente, met with Ms. Crowder and expressed that Ms. Muldoon was professional throughout the meeting, and that questions asked were of

a need to understand and completely professional. Mr. Fuente wrote a statement to this end, as did Ms. Muldoon, which stated that Ms. Muldoon acted professional throughout their meeting and the meeting achieved all objectives, ending positively. Ms. Wersel's complaint stated the opposite.

32. On May 2, 2022, Ms. Muldoon's doctors adjusted her Intermittent FMLA leave to allow Ms. Muldoon to return to work up to 8 hours, placing her back to full-time status, except for needing up to three, three-hour treatments per month until February 23, 2023. Ms. Muldoon discussed with her doctors that she should try not to go over the 8 hours although she usually worked well beyond that on a typical workday to keep up with the department's needs.

33. ABCFWS' third-party administrator approved this leave for Ms. Muldoon. Following this approval, Ms. Muldoon had another conversation with Ms. Crowder in which she expressed an interest in working more from ABCFWS' home office in Orlando, rather than remotely as she had been doing through most of her career. Ms. Crowder seemed excited by this news and even informed Ms. Muldoon that she had received authority to hire someone to assist her with her job duties. Ms. Muldoon drafted and posted the job for her new talent acquisition specialist. Once Ms. Muldoon posted

the job, Ms. Crowder informed her that she already had an internal Human Resources candidate, Gina Faletto, in mind for the position. Ms. Muldoon scheduled a formal interview with Ms. Faletto and responded back to Ms. Crowder that she agreed Ms. Faletto would be a good fit to join her team. An offer was made to Ms. Faletto.

34.     On May 3, 2022, Ms. Crowder announced that Ms. Faletto would be joining Ms. Muldoon's Talent Acquisition's team.

35.     On May 4, 2022, Ms. Crowder scheduled a Microsoft Teams meeting with Ms. Muldoon. When Ms. Muldoon logged into the meeting, she noticed that Ms. Crowder and ABCFWS' Senior Director of Risk Management, Jody McClure, were in attendance. Ms. Crowder then informed Ms. Muldoon that she had called the meeting to terminate Ms. Muldoon's employment due to a recent complaint regarding Ms. Muldoon's unprofessional behavior during a staff meeting. Ms. Crowder said because she had been counseled before, referring to the complaint from Ms. Wersel, Ms. Muldoon's termination became effective immediately. When Ms. Muldoon asked for more information regarding this complaint, Ms. Crowder refused to provide any details and just reiterated that Ms. Muldoon's employment had been terminated. Ms. Muldoon expressed her

shock as significant planning had been done in conversations held with Ms. Crowder for the coming fiscal year including her new staff member and travel; Ms. Muldoon was a high performer in staffing the company, having achieved, or exceeded all corporate hiring and project goals set before her. Ms. Muldoon stated in the meeting that she was on FMLA and reduced hours during the complaint from Ms. Wersel and was still covered by FMLA.

## COUNT I
## VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT
**FMLA Retaliation**

36. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 35 of this Complaint as though fully set forth herein.

37. The prohibitions against interference with the exercise of rights, discrimination, and interference with proceedings or inquiries described in the FMLA, 29 U.S.C. § 2615, apply to employers with respect to eligible employees taking, or attempting to take, leave under the FMLA.

38. Under the FMLA, it is unlawful for an employer to take action against an employee because the employee exercises her FMLA rights. The FMLA prohibits an employer from "discharg[ing] or in any other manner discriminat[ing] against any individual" for asserting her rights under the

FMLA. 29 U.S.C. § 2615(a)(2).

39. As more particularly alleged hereinabove, at all times material herein, Plaintiff was and is an "eligible employee" and Defendant was and is an "employer" within the meaning of the FMLA.

40. As more particularly alleged hereinabove, Plaintiff qualified for leave under the FMLA.

41. Plaintiff engaged in statutorily protected activity by exercising her rights to take leave under the FMLA.

42. Defendant knew that Plaintiff was exercising her rights under the FMLA and was aware of Plaintiff's right to protected leaves of absence under the FMLA.

43. Defendant violated the FMLA and retaliated against Plaintiff by, among other things; demoting Plaintiff under false pretenses and terminating Plaintiff's employment under false pretenses.

44. Defendant terminated Plaintiff in retaliation for her protected activity.

45. A causal connection exists between Plaintiff's requesting, taking and/or attempting to take FMLA leave and Defendant's adverse employment actions and ultimate decision to demote then terminate

Plaintiff's employment.

46. As more particularly alleged herein above, Defendant demoted then terminated Plaintiff without a legitimate nondiscriminatory basis for the decision.

47. Defendant's actions and omissions constitute violations of the FMLA.

48. As a direct and proximate result of Defendant's retaliatory and unlawful conduct, Plaintiff has suffered, continues to suffer, and will suffer damages including, but not limited to, lost wages, salary, employment benefits and other compensation lost by reason of Defendant's unlawful conduct in violation of the FMLA and, as such, is entitled to legal relief.

49. In addition, Plaintiff is entitled to appropriate equitable relief including employment, reinstatement, and/or promotion. 29 U.S.C. § 2617(a)(1)(B).

50. Further, Plaintiff is entitled to liquidated damages as Defendant did not act in good faith and had no reasonable grounds for believing that it was not violating the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii).

51. Finally, Plaintiff is entitled to reasonable attorney's fees, reasonable expert witness fees, and other costs of the action. 29 U.S.C. §

2617(a)(3).

WHEREFORE, the Plaintiff, LINDA MULDOON, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, ABC LIQUORS INC d/b/a ABC Fine Wine & Spirits, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant violated the FMLA and engaged in unlawful conduct and employment practices prohibited by the FMLA in that Defendant demoted, discharged, discriminated against and/or retaliated against Plaintiff for taking leave under the FMLA and exercising her rights under the FMLA;

B. Award damages to Plaintiff for lost wages, salary, employment benefits, and all other compensation denied or lost resulting from Defendant's unlawful conduct and employment practices in violation of the FMLA, and to otherwise make her whole for any losses suffered because of such unlawful employment practices in violation of the FMLA;

C. Award Plaintiff liquidated damages as recoverable under the FMLA and as consistent with law;

D. Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

E. Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

F. Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT II
### VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT
#### FMLA Interference

52. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 35 of this Complaint as though fully set forth herein.

53. The prohibitions against interference with the exercise of rights, discrimination, and interference with proceedings or inquiries described in the FMLA, 29 U.S.C. § 2615, apply to employers with respect to eligible employees taking, or attempting to take, leave under the FMLA.

54. Ms. Muldoon was an employee of ABCFWS, and ABCFWS is a covered employer as defined under the Family and Medical Leave Act of 1993, 29 U.S.C. 2601, *et seq.*, as amended. Ms. Muldoon was, at all times relevant to this Complaint, eligible for leave under the FMLA.

55. ABCFWS' third-party administrator approved Ms. Muldoon for FMLA leave from February 17, 2022, through March 13, 2022. They then approved Intermittent FMLA leave for Ms. Muldoon from March 14, 2022, through March 24, 2022, allowing for a reduced workday of four hours per day.

56. On March 25, 2022, the administrator again approved Intermittent FMLA leave for Ms. Muldoon allowing Ms. Muldoon to miss two hours of work per day.

57. Finally, on May 2, 2022, the administrator approved Ms. Muldoon's Intermittent FMLA leave allowing for three, three-hour medical treatments per month.

58. Unfortunately, Ms. Crowder did not accommodate Ms. Muldoon's FMLA leave and instead terminated Ms. Muldoon's employment on May 4, 2022.

59. As a direct, proximate, and foreseeable result of ABCFWS' conduct described above, Ms. Muldoon has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, loss of benefits, inconvenience, embarrassment, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on

pay, bonuses, and other tangible and intangible damages. These damages have occurred in the past and are permanent and continuing.

WHEREFORE, the Plaintiff, LINDA MULDOON, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, ABC LIQUORS INC d/b/a ABC Fine Wine & Spirits, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant violated the FMLA and engaged in unlawful conduct and employment practices prohibited by the FMLA in that Defendant demoted, discharged, discriminated against and/or retaliated against Plaintiff for taking leave under the FMLA and exercising her rights under the FMLA;

B. Award damages to Plaintiff for lost wages, salary, employment benefits, and all other compensation denied or lost resulting from Defendant's unlawful conduct and employment practices in violation of the FMLA, and to otherwise make her whole for any losses suffered because of such unlawful employment practices in violation of the FMLA;

C. Award Plaintiff liquidated damages as recoverable under the FMLA and as consistent with law;

D. Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

E. Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

F. Grant such other and further relief as this Court may deem equitable, just, and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 17th day of October 2022.

*/s/ Jason W. Imler, Esq*
Jason W. Imler
Florida Bar No. 1004422
**Imler Law**
19409 Shumard Oak Dr., Unit 103
Land O' Lakes, Florida 34638
(P): 813-553-7709
Jason@ImlerLaw.com